IN RE: Melissa **GIGLIO** aka Mellisa Candella, Debtor.

**CASE NUMBER 08–42141**

United States Bankruptcy Court, N.D. Ohio.

Signed June 11, 2009

John H. Chaney, III, Daniel Daniluk LLC, Warren, OH, Philip D. Zuzolo, Zuzolo Law Offices, LLC, Niles, OH, for Debtor.

## ORDER SANCTIONING FORD MOTOR CREDIT, LLC

Honorable Kay Woods, United States Bankruptcy Judge

This Court issued Order to Appear and Show Cause ("Show Cause Order") (Doc. # 49), which ordered one or more repre- sentatives of Ford Motor Credit, LLC ("Ford") to appear at a hearing on March 24, 2009, and show cause (i) why Ford should not be found to have violated the discharge injunction in 11 U.S.C. § 524(a)(2) by collecting payments from Debtor Melissa Giglio *aka* Mellisa Candella ("Debtor") on a discharged debt; (ii) why Ford should not be sanctioned for such violations; and (iii) why Debtor should not be entitled to recover her costs, including attorneys' fees, resulting from or relating to such violations. The Court held a hearing on the Show Cause Order on April 30, 2009 ("Show Cause Hearing").

## I. FACTUAL BACKGROUND:

Debtor filed a voluntary petition pursuant to chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") on July 23, 2008 ("Petition Date"). The first meeting of creditors pursuant to 11 U.S.C. § 341 was scheduled for and held on September 16, 2008. Debtor was granted a discharge on November 25, 2008 ("Discharge Date") (Doc. # 31).

A Reaffirmation Agreement (Doc. # 37) by and between Debtor and Ford regarding a 2007 Ford Focus ("Debtor's Car") was filed on February 13, 2009. Debtor signed the Reaffirmation Agreement on September 25, 2008. Ford signed the Reaffirmation Agreement on February 13, 2009. The Court entered Order Disapproving Reaffirmation Agreement (Doc. # 38) on February 19, 2009, because the Reaffirmation Agreement was not made prior to the Discharge Date as required by § 524(c)(1) of the Bankruptcy Code.

On February 27, 2009, Ford filed Motion to Reconsider Order Disapproving Reaffirmation Agreement ("Motion to Reconsider") (Doc. # 40). Ford argued in its Motion to Reconsider that the Reaffirmation Agreement was "made" when the Debtor signed the Reaffirmation Agreement,

which was prior to the Discharge Date. The Court held a hearing on the Motion to Reconsider on March 19, 2009 ("Reconsideration Hearing"). Counsel for Debtor and counsel for Ford appeared at the Reconsideration Hearing.

At the Reconsideration Hearing, Debtor's counsel made the following representations to the Court: (i) Ford repossessed Debtor's Car on December 31, 2008, even though Debtor was current with her payments to Ford at that time; (ii) Debtor made monthly payments to Ford pursuant to the original loan in January and February 2009 with the hope that Ford would return Debtor's Car to her; and (iii) as a result of the delay, Debtor was no longer interested in (a) having Ford return Debtor's Car to her or (b) pursuing the Reaffirmation Agreement.

Ford's counsel represented to the Court that: (i) Ford repossessed Debtor's Car because Debtor had not entered into a Reaffirmation Agreement with Ford, and (ii) Ford had retained payments made by Debtor in January and February 2009.

Following the hearing on the Motion to Reconsider, on March 24, 2009, this Court entered Memorandum Opinion Regarding Motion to Reconsider Order Disapproving Reaffirmation Agreement ("Memorandum Opinion") (Doc. # 47) and Order Denying Motion to Reconsider Order Disapproving Reaffirmation Agreement (Doc. # 48). In the Memorandum Opinion, the Court noted that Ford had taken "diametrically different positions at various times with regard to the Reaffirmation Agreement." (Memo. Op. at 2.) The Court found that Ford had presented no reason to justify the relief it sought and, accordingly, denied the Motion to Reconsider.

As a result of Ford's conflicting positions in the Motion to Reconsider and at the Reconsideration Hearing, as well as the facts that were represented to the Court by Ford's counsel, this Court entered the Show Cause Order. A representative of Ford, Kim Crist, appeared at the Show Cause Hearing. Mr. Crist was accompanied by counsel for Ford.

At the Show Cause Hearing, counsel for Ford stated that a Reaffirmation Agreement was filled out and sent to Debtor. Debtor returned the Reaffirmation Agreement to Ford; however, Ford believed the Reaffirmation Agreement was not properly completed by Debtor. As a result, although Ford contacted Debtor to try to resolve its issue, Ford did not file the Reaffirmation Agreement with the Court. Ford failed to (i) resolve its issues with the Reaffirmation Agreement and (ii) file the Reaffirmation Agreement with the Court prior to the Discharge Date.

More than a month after the Discharge Date, on December 31, 2008, Ford repossessed Debtor's Car. After Debtor's Car was repossessed, Ford received and accepted three separate payments from Debtor. Ford received these payments on or about January 2, January 27, and February 24, 2009.

After Debtor's Car was repossessed, Debtor completed the Reaffirmation Agreement to Ford's satisfaction and sent it to Ford. As outlined above, Ford then signed and filed the Reaffirmation Agreement. After the Court disapproved the Reaffirmation Agreement as untimely, Ford filed the Motion to Reconsider. At the Reconsideration Hearing, the Court was informed that, although Ford had repossessed Debtor's Car, Ford retained the payments Debtor sent to Ford thereafter.

At the Show Cause Hearing, Ford repeatedly asserted that its retention of Debtor's post-repossession payments was not a violation of the discharge injunction because Debtor made the payments voluntarily. As a consequence, Ford insisted

that it did not violate the discharge injunction.

At the conclusion of the Show Cause Hearing, Ford represented to the Court that it had sent Debtor a check for $1,904.00, which represented all post-petition payments made by Debtor to Ford, including the three post-repossession payments.

## II.  LAW AND ANALYSIS:

The discharge injunction provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2) (Lexis-Nexis 2009). Thus, after the Discharge Date, Ford was enjoined from taking any action to collect on the discharged debt from Debtor personally. Ford asserts that (i) Debtor voluntarily made the post-repossession payments, and (ii) Ford took no action to collect on the discharged debt from Debtor personally.

█ Although 11 U.S.C. § 524(f) permits a debtor to voluntarily repay any debt, this Court finds Ford's characterization of Debtor's post-repossession payments as "voluntary" to be disingenuous. This Court finds that after Ford repossessed Debtor's Car, Ford enticed Debtor to make the post-repossession payments on the discharged debt by indicating to Debtor that Ford would obtain this Court's approval of the Reaffirmation Agreement and, thereafter, return Debtor's Car. This Court further finds that Ford knew, or should have known, that this Court would disapprove the Reaffirmation Agreement as untimely. This Court finds that Ford had no reasonable basis to assume Debtor was making voluntary payments on a discharged debt after the collateral was repossessed. Indeed, Mr. Crist acknowledged the same.[1] Moreover, Debtor's counsel represented that Debtor made the post-repossession payments to Ford because that is what she thought she needed to do to have Ford return her car.

The actions of Ford cannot and will not be condoned by this Court. Ford held a position of power and influence over Debtor with regard to Debtor's Car. Ford abused its power by enticing Debtor to make payments on a discharged debt in the unrealistic hope that Ford would return Debtor's Car to Debtor. Because Ford's actions regarding the Reaffirmation Agreement were designed to encourage Debtor to make post-repossession payments on the discharged debt, Debtor did not make such payments to Ford voluntarily. This Court finds that Ford's conduct regarding the Reaffirmation Agreement constituted an act to collect the discharged debt. As a consequence, the Court finds that Ford violated the discharge injunction in 11 U.S.C. § 524(a)(2).

█ "There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *Fokkena v. Countrywide Home Loans, Inc. (In re O'Neal)*, 2008 WL 3932153, *2, 2008 U.S. Dist. LEXIS 64437, *5 (N.D. Ohio 2008). Moreover, courts have found that a debtor is entitled to recover her damages as a result of a creditor's willful violation of the discharge injunction. *See In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003). This Court

---

1.  In speaking about the frequency with which debtors make payments after their car has been repossessed, Mr. Crist stated, "I've been with the company for twenty years, and in all the time that I've been there, this is the first time that I have ever seen this, ever." (Show Cause Hearing at 10:51:26.)

has the inherent power to sanction Ford for its conduct.[2]

■ For the reasons set forth above, the Court finds that Ford violated the discharge injunction and sanctions against Ford are appropriate. Consequently, this Court orders Ford to: (i) return all post-petition payments to Debtor, to the extent Ford not already done so; (ii) provide this Court and Debtor's counsel with an accounting of all post-petition payments made by Debtor to Ford; and (iii) provide this Court and Debtor's counsel with evidence that all post-petition payments made by Debtor to Ford have been returned.

The Show Cause Order also referenced the possible sanction of Debtor's recovery of costs and damages resulting from or relating to Ford's violation of the discharge injunction. Absent Debtor's filing of Adversary Proceeding No. 09–4105, this Court would have invited Debtor to file a detailed request for such costs. Under the circumstances, the Court will determine if further sanctions against Ford are appropriate at the conclusion of the adversary proceeding.

**IT IS SO ORDERED.**

2. On May 13, 2009, Debtor filed Debtor's Motion To Stay Ruling on the Issuance of Sanctions Against Ford Motor Credit So That Debtor May File An Adversary Proceeding To Conduct Discovery And Present Evidence of Damages ("Motion to Stay") (Doc. # 60), which requested this Court to "stay" any ruling on sanctions against Ford. On May 29, 2009, Ford filed Creditor's Response to Debtor's Motion to Stay Ruling on the Issuance of Sanctions Against Ford Motor Credit (Doc. # 61), which requested this Court deny the Motion to Stay. On June 3, 2009, Debtor filed an adversary proceeding (Case No. 09–4105) against Ford seeking damages for violations of the automatic stay and discharge injunction.

This Court did not rule on the Motion to Stay because it appeared to be an inappropriate request. The Court's timing regarding entry of this Order was not related to or influenced by the Motion to Stay. The Motion to Stay is now Moot.